Good morning, Your Honors. May it please the Court. My name is Daniel Ryan. I represent the appellants in this matter. Counsel, we're having a hard time hearing. Oh, I'm sorry. Could you just pick that microphone up a little? I don't know what it is. Maybe it was just me this morning, but I'm having trouble. Me, too. Could I get your name again, please? Daniel Ryan. We have Thomas Christensen listed. He is listed. I actually recently did a notice of appearance on this case and also did the acknowledgment of hearing stating that I would be it. Great. Then we'll just have to ask our courtroom deputy to please make sure we show it's Mr. Ryan here today. We have Thomas Christensen on the calendar, so we want to make sure. Your Honors, basically, looking at this case, it's one that really comes down to interpretation issues, not only of contractual language, but of statutory law, and revolves around more or less pieces of a contract in determining whether or not the lower court erred when it determined as a matter of law that the contract at issue was unambiguous. The lower court did not specifically say this, but it more or less implied that, also stating that there's no reasonable, that plaintiff's interpretation of the contract at issue is untenable. I submit to the Court that on the face of the document, and the document that I'm speaking of specifically, which on the Court is well aware, but to refresh the Court's recollection, is Excerpt of Record 000158, a renewal statement, which I urge is a contract of insurance subject to the same construction principles as contracts of insurance, which they are strictly consistent with. Kennedy. Counsel, on that point, Judge Gould, if I could interject.  Do you have any authority, because I didn't see this in the briefs or in the district court opinion, any authority that the renewal notice should be construed in the way we construe a contract against an insurance company? Well, I'll be honest with you, Judge. There is no exact authority on point for me stating that a renewal statement is to be interpreted under the same interpretation guidelines as a contract of insurance. You won't find any cases cited by the appellee either on this point. I will urge that it is, under the same principles, a contract of adhesion. It is a contract with an insurance company. It is one where the party has no bargaining power. It's a necessary thing, insurance, or it's something that is very needed in commonplace life, and it's on a take-it-or-leave-it basis. And the Nevada, Nevada has stated that the relationship of the insurer to the insured is akin to that of a fiduciary. I guess, let me follow up on what Judge Gould is asking. It's one thing to say this statement is ambiguous. Another thing, it's another thing to say it's a contract. I mean, I don't know why a bill would be a contract, but does it matter whether it's a contract or just a bill? I mean, if it's ambiguous and it says you can pay it by a certain date. Well, I believe that it's. It doesn't make it if it's a contract or not. I mean, it has provisions that, whether it's construed as a bill or a contract, I believe the language of it, it states on it that it has a specific expiration date on it. And also on it, it says that it's a policy. It references in the upper left-hand corner that it's a policy. It has an expiration date, and it says prior payment must be received prior to expiration of your policy. So in a sense, I think it is a contract in a sense that, all right, we are going to renew this, and you have until this expiration date to pay for it. And I think that reading the document on the face, it's a very reasonable interpretation. Again, these documents are strictly construed against the insurer. And I think that in answer to finalize your question, Judge Gould, I think that in the context of the case law in Nevada and the relationship with the parties, that this document should be construed according to those same guidelines. Okay. Now, there's also, as I understand it, there was a provision in the policy itself labeled automatic termination that said the policy would automatically terminate at the end of the current policy period if, you know, if you don't accept the offer to renew it. Okay. So, you know, why, if you look at that, if I'm right about that provision existing, if you look at that together with the renewal notice, is there ambiguity then in the total contract sense? I do believe that there is ambiguity in the total contract sense as well. You've got a provision that says if it's not in the contract, automatic termination if a payment is not received when due. And then you have a renewal statement that says that it's due by the expiration date. Also, there is problems with a particular clause that you brought up in regards to Nevada statutory law, which I can touch on a little bit later in my argument. And also, I'd like you to keep in mind, Judge Gould, that on excerpt of record 395, which was not really, I don't believe was mentioned in the briefs, that if you want to look at additional things in totality from the documents available and read them as a whole, there's also insurance cards that were issued to Mr. Lewis with an effective date of 6-30-2007 and an expiration date of 7-31-2007. So I think that if we're looking, you know, within the four corners of the documents provided and analyzing them as a whole, I think that there is certainly enough to show that there was an ambiguity here. And I think that there is. Kagan. Counsel, just for the record, you're looking at page 000158, right? When you said the effective date was June 30th, the expiration date was July 31? Yes. Payment to be received no later than June 30? Correct. Payment must be received prior to the expiration of your policy? Correct. Thank you. Now, what's kind of ironic about the lower court's decision is that it's more or less stating that the policy is unambiguous as a matter of law, but then it's also deciding to go to other circumstances. It cites the course of dealings, which I'm kind of strained to understand why the lower court is doing that. If they're going to make a decision that it's ambiguous, you don't consider these other factors in Nevada unless the contract is, in fact, ambiguous. And to state that plaintiffs did not put forth any evidence suggesting that, you know, there was a genuine issue of material fact as to interpretation of the ambiguity, well, you know, there are circumstances that was not cited by the lower court. I've already brought up the documents involved. There was never any indication by the appellant that the insurance policy had, in fact, elapsed. There was never any communication saying that, never informed Mr. Lewis that a lapse had, in fact, occurred. Mr. Lewis is dealing the whole time with U.S. Auto. He never even interacts with the appellant until he actually files a claim. And he's under the impression that entire time that he's under a year policy. And you can find these statements repeatedly in his deposition. Also, there's evidence that's in the excerpts of record that there's a, I believe it's a payment or a notice that has a year date timeframe, which lends credence to Mr. Lewis's statements. That statement came from a broker, right, not from the defendant? Correct. And, you know, that issue was touched on in the defendant's brief. And if I could have just one second. You know, the defendant cited a case called Grand Hotel v. Gift Shop or Grand Hotel Gift Shop v. Granite and kind of stated in the sense that that case stands for the broad proposition that the broker is not the agent of the carrier. However, there are nuances to that opinion, and it's not a hard and fast rule. Granted, that is the general rule. I will concede that. But some of the things that the court in that case urged the or some factors they urged to be considered are reliance on an agent's judgment in procuring the coverage. Now, I think that it's evident from the record that Mr. Lewis contacted U.S. Auto directly, and he was relying on them to provide him coverage. There's no evidence that he was relying on the appellant to describe to him any instances or nuances of the policy. And it seems evident that the broker also selected which insurance company to use, which is also a factor under that decision as well. And also, whether the agent knew that the insured was relying on him to explain the insurance policies he procured. Now, Mr. Lewis's deposition is full of representations that he is constantly working with U.S. Auto, and they are telling him about the year-long policy. They are informing him of the policy. They are giving him all the information about the policy. An appellant doesn't even contact him about the policy until the appellee makes a claim for it under the same. Do you want to reserve any time, Mr. Ryan? You don't have to if you don't want to. Let me reserve three minutes, Your Honor. So in sum, I really think that this issue that I just spoke of, the contractual language, really goes to the heart of this case. I think that while a court can decide whether something is unambiguous as a matter of law, if it is ambiguous, there is case law in Nevada suggesting, of course, that that is the province for the jury, including cases cited by the plaintiff, which include Hartford Insurance Group v. Winkler, where the issue was whether the plaintiff was indeed uninsured was determined by a jury, and the Supreme Court held that was for the province of the jury. The issue of whether the plaintiff was driving a, quote, non-owned vehicle was also talked about in that case, that that was a province for the jury to determine, and also cited was Smith v. Lloyds, London, where there was an ambiguous provision, albeit from the insured to the insurer, but that was still held to be the province of the jury. The next issue that I believe the lower court aired is the, obviously, is the contractual issues. You're down to three minutes. Okay. You know, I apologize, Your Honor. This is the first time I've been here. Is this three minutes, the one I have for rebuttal? Right. Okay. Thank you. You're doing fine. I just want you to know how the time works. Okay. Thank you. Good morning, Your Honor. Good morning. Matthew Douglas for the defendant appellants, appellees, cross appellants. If I could just perhaps save one minute just for rebuttal on the cross appeal. Your Honors, very briefly, I heard counsel for appellant talk about the issues. I think it's, as they did below in this court, the appellants are raising three issues for which they're seeking coverage. There's two statutory claims they make, and the other is this ambiguity issue over the renewal notice. Now, first, I do want to comment and say this is an offer. This is not a contract that we're talking about. So it's an ambiguity and an offer. I think it's interpreted just like any other contract, and the standard should be whether the phraseology is. Let me ask you a question on that point. Yeah. Suppose this is hypothetical. Suppose this renewal statement said, your policy, the money is due, the premium is due, if you pay by July, the policy won't lapse if you pay by July 31, 2007. Clearly it unambiguously says it will not lapse if you pay it by July 31, even though it's due on 630. Would the policy have lapsed in this case, then? Based upon that hypothetical, no. Okay. Now, suppose it could be construed that way. Suppose it could be construed that way. It doesn't say that, but suppose it could be construed that way. Then what? Well, I – we kind of touched on this in the court below, and, you know, clearly if it can be – if you're on – if this court or the district court found that there's an ambiguity in the renewal, then there's a – then there's obviously an issue of whether it lapsed. And as we said in the lower court, then you would have to find coverage. I'm having a hard time understanding why there isn't a latent ambiguity here when it says that the payment is due by 630, but the policy won't lapse if it's received prior to the expiration, and then in this very document there's an expiration date. Sure. Sure. And that's been – that's been the main argument in this case. I will say this is the second argument they made. Originally they said they made a timely payment. They retracted that. They came up with this ambiguity argument. It was a change. Be that as it may, the – there's two – there's three very big points. First of all, it's a renewal notice. Okay? So right away, this is – this – it's an offer to go to another term. So when it says your policy, it's obviously referring to their current policy. As I mentioned in the briefs, as we touched on in the lower court, as we touched on in the Appellant Lewis's deposition, in our everyday experience we all get bills in the mail. We all have accounts in our name. They have a paystub. On the paystub it has a due date. This – this renewal offer was set up the same way. So it clearly says due date. It's also in the middle of the page surrounded by stars. It would have been readily apparent to anyone, I think, common sense interpretation that your policy – You talk about normal bills you get. I mean, I get a bill that says it's due on the first of the month, and then it says, but you don't incur a late charge if you pay it by the seventh. Sure. That strikes me as something like this. Well, and I understand that, Your Honor. The other – the other point is that right above it, I know because of the filing mechanism it got kind of blocked out, but right above the expiration date, the top right-hand corner that they want to hang their argument on, it says effective date. Okay? So you can't divorce, I think, that expiration date from the effective date right above it. How does that help me? Effective date, June 30, expiration date, July 31. To avoid lapse in coverage, payment must be received prior to the expiration of your policy. Right. And so I believe, Your Honor, that that effective date right above the expiration date shows that that's clearly talking about the future term that's being offered, and when it refers to your policy, it's referring to the current term. This is an offer, you said, not a contract. That's correct. So you think that this is an offer of a policy that will become effective on June 30? If payment is received. And so basically, Your Honor, that's why I – it gets really to the heart of this case, which is what more has – more of the, I guess, discussion has revolved upon, and appellant didn't touch on it, and I would also ask that this Court consider it waived because they did not bring it up in their opening brief, and that is, I think, that, as I mentioned in the district court, however this court comes down on any of the three claims they make for coverage, the two statutory conditions or the ambiguity. Those are all issues as a matter of law. But I think also, more importantly, under the genuine dispute doctrine or in Nevada the reasonable belief doctrine, I think this Court can still affirm the district court in the grant of summary judgment on the extra contractual claims, both the breach of the covenant of good faith and fair dealing and the NRS 6868310 claims. And I think, if anything has been shown by the length of this litigation, is that there is a genuine dispute as to coverage. And my client's reliance upon the renewal notice, the fact that the appellants admit they made no payment until after this accident and then come back and try to see coverage, I think it can be agreed, and in fact, the appellant's counsel at the lower court agreed that my client's interpretation was reasonable of the notice, the offer, that regardless of how this Court comes down on the coverage issue, either through the ambiguity or the statutory arguments, I think you can still find that my client acted reasonably in relying on its underwriting department, which said, hey, this guy, he didn't pay for his policy until after the prior term lapsed. And so for that reason, it was a reasonable basis that they denied this claim. And I think that's the only conclusion you can come to. In fact, at the lower court, the appellant's counsel, as I mentioned, indicated that we had a reasonable interpretation of our own renewal notice. And that kind of gets to the heart of this case. And I will just say that even though they mentioned it in the issues presented in their opening brief, they did not give one bit of argument in their whole brief on this issue. And I think that then it's waived on appeal. So it asks this Court to at least affirm the grant of summary judgment as to those counts in the underlying complaint, the extra-contractual remedies. They did note a number of arguments in their reply, but that was after the appellant in response to our brief. And I will just say that all of the case law cited by the appellants for this, on this point, is completely distinguishable from the case at bar, because all of those cases dealt with situations where there was no question that there was a policy in force. In other words, almost all of them are talking about failures to settle within policy limits. I think that circumstance doesn't come into play here because the whole issue is whether there was a policy in force. If there's no policy in force, all the duties that flow from it to protect the insured, to make sure that they take their interests equal to the insurance companies, while still relevant, I don't think it carries the Allstate v. Miller case, the Christie case they cite, all the cases they cite, they all deal with a very different factual circumstance. There was already agreed upon coverage in force. The question was whether or not maybe there was an issue as to coverage or there was an issue as to the value of an underlying claim, but it wasn't the facts we have here. So I really think even if you consider the case law they cite, it's irrelevant. And in fact, Allstate v. Miller, which is the main case they hang their hat on, it doesn't even stand for the clear proposition that they cite it for. And in fact, in Miller itself, they seem to adopt the Ninth Circuit genuine dispute standard, which we cited in our briefs. I'm not sure I followed what you would have us do if we were to find that this thing is ambiguous and the summary judgment shouldn't have been granted. Well, you said we should affirm something else? Well, yes. If this Court were to say, fine, that the offer was ambiguous, and whether it be remanded for a factual from additional discovery or trial on that point, or as a matter of law you determine that it's ambiguous, I still think you can affirm the district courts granted a summary judgment as to the extra contractual claims. They made claims for breach of the covenant of good faith and fair dealing. Is that even on our plate? Well, it was part of the district court's ruling below. Their appeal seems to indicate that they were appealing the whole order. But again, they did not mention any of this in their opening briefs. I believe they waived the argument. So again, we agree with that. I'm not saying that we will. But if we agreed with them, what would stop us from just saying the judge found that the offer was not ambiguous, we disagree, we think it was ambiguous as a matter of law, go back and have further proceedings consistent with that ruling, something like that. Right. Well, I think that, like I said, I think you can still affirm part of the order in part in the judgment for the appellees on the issues of the extra contractual claims. In other words, it would go back, whether it be for a hearing, for additional information on the ambiguity to determine the actual contract, but they could not, let's face it, the white elephant in the room here is the appellant's got a $3.5 million default judgment, okay? And the only way, that's why they're here, that's why this case is before Your Honors. And if you affirm on the dismissal of the extra contractual claims, we're really talking about a mandatory minimum policy, and in Nevada, that's $15,000. And so I would ask that if you want to remand for coverage on the policy, you still find that my client acted reasonably, cuts off the bad faith claims, and we're able to either go back and resolve this, whether we need more hearings on whether the ambiguity or there's simply a declaration now that coverage for the $15,000 is owed. But that's the distinction that's important, and that's why it's important. Roberts. Okay. Got you. I just want to touch briefly. Your Honors asked some questions. I think one of the main cases in regards to the ambiguity as well as the standard counsel cited, he talked about the appellees didn't cite any case law in support of the standard that you should only interpret as a regular contract. I think the Schmidt case, it's actually a Ninth Circuit case. I think while factually different than this case, it's important because it notes that in this case, in that case, it was, again, over a renewal offer and actually it was over a rejection, but they never, this Court never found that the standard for interpreting insurance contracts applied. I'll briefly touch on our cross-appeal. Your Honors, we filed it once we were going to go up on appeal. We felt it should bring this issue before the Court as well. It's absolutely uncontradicted by the appellants that they did not have an assignment for this claim for eight months. They got a default judgment. They filed suit against my client. Only through discovery did we learn this. And let's face it, the law is quite clear. They need, Nevada is not a direct action State, so in order to pursue Mr. Lewis's insurance cover, they needed an assignment. They did not get one. Instead, they filed suit. Eight months later, they run into court literally at the hearing on the motion to compel and hand me an assignment eight days old. And that prejudice your client? How did that prejudice your client? Well, for eight months, we had to defend a case that was not rightfully brought. They had no standing. And so we incurred fees. We incurred costs. And, you know, a bet you wouldn't have incurred if this assignment had happened earlier? I don't know. Well, we won't know. I mean, you know, it's kind of like, you know, it's kind of like the appellant's argument. They say, well, you should have filed a motion to dismiss. We should have known that they had properly filed a lawsuit, so it's our loss. And I don't think that's fair. And I think it encourages this kind of behavior. And I do note that this particular, President Counsel excluded, this particular firm has been cited by our district court several times for issues involving bad faith litigation and attempt to set up insurance companies. And I think, as I mentioned in my brief, the – for this court or any court to award fees becomes more acute when you have habitual offenders, shall we say. Your briefing confused me a little bit because it seemed to morph into an argument that you should be entitled to fees as a sanction. Was there a motion for sanction made in the trial court? No, there wasn't, Your Honor. But the reason why I bring that up is in Nevada, you can get, I've argued, and the court did not address it, and appellants did not, cross-appellees did not address it either. In Nevada, you can be awarded attorney's fees as a cost of the litigation, which is sort of like a sanction. And I cite two cases for that proposition. One of them specifically, the hairdresser's case, I believe specifically references declaratory actions, which this was. So I think there's a basis not only under NRS 18-010, which is the brought and maintained without reasonable ground statute, sort of like Rule 11, is that you can also impose it as a cost of litigation. And while I know it's an abusive discretion standard, when they blatantly admit they did not have an assignment, they had no standing for 8 months, I think it's deserved. Thank you. Thank you. Mr. Ryan. Mr. Ryan, can I just ask, is it contested that there was this assignment very late? It seems to be uncontested in the briefing. Your Honor, I'll be honest. I came into this case a little bit later, but from what I gather, yes, this assignment happened later. You know, the kind of the issue that I'm having with counsel's argument, and I don't know if I'm missing something, but the complaint named, you know, Mr. Nalder and it also named Mr. Lewis as the insured. So if we're going to make the argument that, oh, because of this whole assignment that, you know, I wouldn't have been able to defend this case, well, yeah, you would have, because you were being sued by the insured directly, too. So that does not work, and especially if you're going to make an argument about consequential damages, well, it's not because of the assignment that you had to defend the suit. The cause is because you're being sued by an insured, and the Nalder is now in as a plaintiff because of the assignment. You would have had to defend it anyway. Okay? What about his argument that even if they were – if this is ambiguous, that they were within bounds and not in bad faith by denying coverage? You know, that – I read through his cases in his brief, and I don't see any case in Nevada that says that the genuine dispute doctrine – first, I know this for sure – that the genuine dispute doctrine applies to NRS 686a.310, which is the Unfair Claims Practices Act. You would not find a case that says the genuine dispute doctrine applies to that particular claim or cause of action, at least to my knowledge. Second, for the bad faith, I don't think that there is a case that says that that theory applies in Nevada as well. I think that while counsel tries to differentiate Miller v. Allstate and say that it's factually distinct, I believe if you looked at the structure, the style and the way that that opinion is written, the Nevada Supreme Court is not just specifically addressing a factual scenario. They are more or less using the occasion as one to elaborate and define insurance bad faith law in Nevada. And the test is whether an insurer considers – must equally consider the insurer's interest as it does its own. Now, there's no talk about the genuine dispute doctrine in there. That's the test in Nevada. That's what's happening. And here, we have, as they talk about in Allstate v. Miller, insurer has a duty to settle. Was there ever an occasion in this case when the insurer informed the insured of an alder settlement offer for the policy limits? There's a duty to investigate. Did they investigate whether or not the coverage was valid or not? And in conclusion, Your Honor, I'd just like to add, I know my time's up, but Allstate v. Miller also says that the motives of the attorneys bringing the case and other cases as to the case at hand are irrelevant, and that's very clear in that opinion. Thank you. Mr. Douglas, you reserved a minute on the cross-appeal, didn't you? Do you have anything to add? Thank you, Your Honor. I'll be very brief. I think it's just, as I mentioned, this is a case where we feel it was improperly submitted, and I think the district court, in not considering that, I think it's abuse of discretion, I think, for at least those eight months, and I would ask that if you do remand that consideration of fees for that time period. Thank you. Thank you, Your Honor. The case just argued is now submitted. Good morning. Mr. O'Reilly, I heard there was some confusion about your name being not on the calendar. Would you mind giving your card to the courtroom deputy and make sure we have you properly listed? Well, let me put that down. 11-16511 Forsyth v. The United States. Each side will have 15 minutes. Then may I? Yes, Your Honor. Judge General, as she should be. She should be, Your Honor. Gentleman, bring it over.
judges: Silverman, Gould, Christen